415 So.2d 783 (1982)
SUNLAND HOSPITAL/STATE OF FLORIDA, and Division of Risk Management, Appellants,
v.
Thomas GARRETT, Appellee.
No. AG-422.
District Court of Appeal of Florida, First District.
June 7, 1982.
Rehearing Denied July 12, 1982.
Bernard J. Zimmerman, Michael M. O'Brien, and William G. Berzak, of Akerman, Senterfitt & Eidson, Orlando, for appellants.
Joseph H. Williams of Troutman, Parrish & Williams, P.A., Winter Park, and John F. Wilhelm, Orlando, for appellee.
ROBERT P. SMITH, Jr., Chief Judge.
Sometimes, in workers' compensation cases, complex legal issues have a way of attracting attention only after the deputy has entered a compensation order and the order has been appealed. Here, after briefing and oral argument, we were left to ponder a sticky legal question concerning the deputy's award of 75% permanent partial disability benefits, based on loss of wage earning capacity, to a worker who hurt his previously vulnerable back while at work in May 1979, went back to work a few months later, and injured it again in December 1979.
Did the deputy err in awarding benefits for loss of wage earning capacity in the absence of medical testimony expressing claimant's anatomic impairment in terms of *784 the American Medical Association Guides to the Evaluation of Permanent Impairment? See section 440.15(3)(a)3, Florida Statutes (1979); Decor Painting & Iowa Mutual Insurance Co. v. Rohn, 401 So.2d 899 (Fla. 1st DCA 1981); Spring Air Mattress Co. v. Cox, 413 So.2d 1265 (Fla. 1st DCA 1982).
Here the deputy found that claimant was physically or anatomically impaired as a result of his May 1979 back injury, as aggravated in December 1979, but the deputy did not rate that impairment in terms of a percentage, whether the AMA-kind of percentage or some other. By deposition a chiropractor testified claimant was totally disabled to work, and the orthopedic surgeon whom the carrier authorized to treat claimant said he was 30 percent permanently impaired when last seen in 1980, due 20 percent to his long-standing back condition (which didn't previously prevent his working), zero percent to his May 1979 accident, from which, the orthopedist said, claimant recovered entirely, and 10 percent to the new injury in December 1979. Neither doctor expressed claimant's disability in terms of AMA-endorsed percentages. Neither was asked to do so, either on direct or on cross-examination.
A practiced eye may discern in these deceptively simple facts a tangle of chapter 440 issues concerning pre-existing conditions, aggravation vs. new injury, law applicable before and after the 1979 amendments to chapter 440, and perhaps other issues, in addition to the need for AMA-endorsed percentages of disability spoken by a doctor, the predicate for finding greater disability due to loss of wage earning capacity. One could write a book.
We think we shall not. None of those issues was substantially raised before the deputy.
No question about AMA-endorsed percentages was raised and noticed in counsel's pre-hearing filing, where the carrier described its "intended position" as:
(1) Claimant has been timely furnished all benefits to which he is entitled to date as a result of the 5/8/79 accident; (2) Reached maximum medical improvement without permanent impairment from 5/8/79 accident; (3) No attorney fees or costs due; (4) Dr. Litchfield [the chiropractor] unauthorized; (5) Claimant not PTD.
The transcript of the deputy's hearing shows the carrier offered no further elaboration of its position, as against claimant's claim and his evidence, before, during, or after the deputy's hearing. The carrier's counsel repeated his "position" in the same general terms quoted above. The two doctors' depositions were filed in evidence without objection. Claimant testified about his disability and work search. The hearing ended without any argument whatever. Counsel rested their case, the deputy thanked one and all, and everybody left.
We do not speculate on whether or how the deputy, if the point now raised had been raised then, could have permitted claimant's counsel to remedy the absence of AMA-endorsed disability ratings in the two doctors' depositions; nor do we foreclose the possibility that the carrier, by introducing an orthopedist's deposition evidencing a disability rating but not its source in the AMA guides, invited or waived the error of which it now complains. It is enough to say that neither the AMA-guide issue, nor any other alluded to above, was ever significantly raised before the deputy, and the deputy never was asked by counsel to address the question now so earnestly argued by the carrier.
It was suggested at oral argument that these deputies are vastly experienced navigators of workers' compensation law, that they know without being told where the carrier thinks the claim should go on the rocks. Thus silence is prudent; and, with the ordered benefits still in its pocket, the carrier urges, some months later and on sophisticated briefs prepared at leisure, that we reverse the order for grave and inexplicable error.
We will have none of this. It is familiar general law that an appellate court will not reverse on a point not preserved in *785 the tribunal of first resort. Hartford Fire Insurance Co. v. Hollis, 58 Fla. 268, 50 So. 985 (1909); Bozeman v. Roberts, 188 So.2d 23 (Fla. 1st DCA 1966). A corollary of that, in workers' compensation appeals, is that we will not reverse for a readily correctable technical error that the deputy was not asked to correct within the time available for correction. Section 440.25(4)(a), Florida Statutes (1981); Genuine Parts Co. v. Morris, 409 So.2d 156 (Fla. 1st DCA 1982); Acosta Roofing Co. v. Gillyard, 402 So.2d 1321 (Fla. 1st DCA 1981). The purpose of workers' compensation being to compensate the worker justly and in time for his disability due to industrial risks, this Court recently excised any incentive for the deputy to apply too-lenient work search standards, by relieving the draconian effect of denying a claim finally and totally for some correctable deficiency in the work search. Flesche v. Interstate Warehouse, 411 So.2d 919 (Fla. 1st DCA 1982).
These principles further imply that the deputy commissioners, not this Court, shall bear primary responsibility for administering chapter 440, and that when a plausible case for particular compensation is shown, all the carrier's impediments to promptly paying those benefits shall be made known to the deputy clearly and contemporaneously, and in substantially the same detail as the carrier would later wish to urge upon us. That the carrier has done so will be shown in the record. We decline to become the tribunal of first resort on complex questions latent in the record but not substantially raised before the deputy. To the extent our own record of decisions these past three years may have given the appearance of a present and continuing readiness to decide questions not substantially raised before the deputy, thus misleading counsel, we now forswear that implication.
Substantial competent evidence supports the deputy's finding that the work search was adequate. The compensation order is AFFIRMED. Considering the affidavit of claimant's counsel concerning the services rendered and the time devoted to the appeal, including oral argument, an attorney's fee is awarded claimant's counsel in the amount of $3,500.
ERVIN and SHAW, JJ., concur.