417 So.2d 990 (1982)
GREYNOLDS PARK MANOR and R. P. Hewitt & Associates of Florida, Inc., Appellants,
v.
Lovie GEORGE, Appellee.
No. AC-84.
District Court of Appeal of Florida, First District.
January 6, 1982.
Opinion Amended and Clarified on Denial of Rehearing August 16, 1982.
Steven Kronenberg of Adams, Kelley & Kronenberg, Miami, for appellants.
L. Barry Keyfetz of Keyfetz & Poses, Miami, for appellee.
PER CURIAM.
This is an appeal from a worker's compensation order directing the carrier to directly reimburse the United States Department of Health, Education and Welfare (Medicare) and Blue Cross for payment of certain medical bills made by those entities on behalf of claimant. We agree with appellant's argument that a more general order conforming to White v. Bell Fruit Co., 4 F.C.R. 382 (1961) would have been appropriate in this case.
In White the deputy commissioner had ordered the carrier to pay for remedial treatment and care under the following terms:

*991 Pay for the remedial treatment, care and attendance in the amounts and to the persons named in paragraph 29 of the above and foregoing order provided, however, that if any one or more of such persons advise that such amounts have theretofore been paid to them by or for the account of the claimant then the amount thereof shall be paid to the party making such payment. (Emphasis in original.)
The Commission said that the deputy commissioner did not err in ordering the employer to pay the costs of the remedial care furnished to the employee, but the Commission noted as follows:
However, it does not appear that there is a lien, as the result of the phraseology in the deputy's Order, against costs of remedial treatment payable to the claimant. Actually, it appears that the effect of the Order of the deputy is to provide reimbursement to any party who has paid costs of any remedial expenses incurred by the claimant. We feel that the deputy's Order should have confined itself to a statement that the employer pay for the costs of such remedial treatment and care incurred by the claimant, leaving to the parties the settling of any differences they may have regarding any contractual rights that may exist among the parties involved, for example, reimbursement of costs of remedial treatment paid by virtue of a private insurance policy covering sickness and accidents.
Apparently the Commission disapproved of the deputy's order because although it would have been proper to reimburse claimant, specifying that there was a lien against those funds in favor of those who had paid on claimant's behalf, it was not proper to direct the employer to pay directly persons or entities which had paid for the care but were not actually before the deputy. Similarly, in the instant case the deputy did not err in ordering the carrier to pay the costs of the remedial care furnished to the employee  the parties do not dispute that the carrier is responsible for payment for the medical care that has been furnished to the claimant  however, the order specifically directed the employer to reimburse entities which were not before the deputy.
In order to conform to the decision in White, therefore, we reverse and remand to the deputy commissioner for entry of *992 an order directing the employer/carrier to pay for the "remedial treatment and care incurred by the claimant, leaving to the parties the settling of any differences they may have regarding any contractual rights that may exist among the parties involved... ." White at 384. Our decision does not mean that employer/carrier is temporarily absolved from the duty to pay for the treatment and care which was provided to the claimant. It means that the treatment and care are to be paid for by employer/carrier and collateral disputes as to reimbursement of outside entities not before the deputy commissioner are to be settled among the parties involved.
We agree with appellant's second argument that under Wekiwa Concrete v. Reddick, 396 So.2d 832 (Fla. 1st DCA 1981), inasmuch as the record does not show that an order has been entered approving any fee arrangement between claimant and her attorney as reasonable and directing the manner of enforcing a lien, the deputy erred in ordering that compensation checks be made payable to both claimant and her attorney.
Reversed and remanded for entry of an order consistent with this opinion.
ROBERT P. SMITH, Jr., C.J., and MILLS and SHIVERS, JJ., concur.

ON PETITIONS FOR REHEARING AND CLARIFICATION
PER CURIAM.
Both appellants and appellee having sought clarification of the opinion of this court, dated January 6, 1982, in the above styled case, the fourth paragraph of the opinion is amended and clarified as follows:
In order to conform to the decision in White, therefore, we reverse and remand to the deputy commissioner for entry of an order directing the employer/carrier to pay for the "remedial treatment and care incurred by the claimant, leaving to the parties the settling of any differences they may have regarding any contractual rights that may exist among the parties involved... ." White at 384. Our decision does not mean that employer/carrier is temporarily absolved from the duty to pay for the treatment and care which was provided to the claimant. It means that the treatment and care are to be paid for by employer/carrier and collateral disputes as to reimbursement of outside entities not before the deputy commissioner are to be settled among the parties involved. As the White decision indicated would be appropriate, there shall be a lien, for the benefit of HEW and Blue Cross, against the payments due which are to be paid to the claimant and she shall insure that those entities are properly reimbursed.
In other respects, rehearing is denied.
MILLS and SHIVERS, JJ., concur.
ROBERT P. SMITH, Jr., C.J., dissents, with opinion.
ROBERT P. SMITH, Jr., Chief Judge, dissenting.
How futile it is, if productive judicial labor is one of our goals, and how unfortunate, if achieving substantially just and practicable results under chapter 440 is another, that we have uncritically acquiesced these past three years in the role pressed upon us by adversariness. That role we illustrated by our decision announced January 6, 1982, which predictably satisfied none of the contenders, not even those whose appeal first found fault with the deputy's order we reversed; and now on rehearing we play that role again. I refer to the Court's continuing attempts to administer, from a distance both geographic and functional, every fine detail of a workers' compensation system which the adversaries refuse to administer themselves, as designed, and in which adversariness all too often faults reasonable efforts of deputy commissioners to fill the void.
Consider the problem that was brought to the Court for judicial solution on the tacit assumption that neither the parties nor the deputy could satisfactorily resolve it: The worker, injured in a compensable industrial accident, incurred a $5,600 hospital bill. The bill was paid not by claimant but by Medicare and Blue Cross. The hospital has been paid and is not complaining. Medicare and Blue Cross, distant and apparently unaware of the fracas, are not complaining. Those complaining are claimant's lawyer, who says the carrier has a chapter 440 obligation to pay the amount of the hospital bill to someone, be it the hospital (already paid), the claimant (already treated and out no money), or Medicare and Blue Cross (not parties before the deputy or the Court, and so far as the record shows not yet asking for payment). The carrier's lawyer says, sure, the carrier has a chapter 440 obligation to pay the amount of the hospital bill, but not to the hospital (already paid), not the claimant (already treated and out no money), and not Medicare and Blue Cross (not parties before the deputy or the Court and not, so far as the record shows, asking for payment).
Ah, there's a conundrum worthy of judicial labors. Evidently the carrier was not interested in solving this problem through telephone calls to the hospital and to Medicare and Blue Cross. Evidently this complex problem is beyond administrative solution by the Division of Workers' Compensation. Evidently the skills of the Chief Commissioner, section 440.45(3)(a), (d), (f), (j), and (k), Florida Statutes (1981), are unequal to the task. The deputy commissioner's solution (let the carrier directly reimburse Medicare and Blue Cross) is unacceptable to the carrier, who says (a) neither has asked for reimbursement; (b) neither is a party; (c) under federal regulations Medicare may not be reimbursable anyway; and (d) this is a matter to be resolved between the carrier, the government, and the hospital.
There is a special poignancy in the carrier's argument that, as a matter of law, the carrier should be permitted to work this out *993 with other affected parties. That, of course, was the Industrial Relations Commission's prescription for administrative chores such as this. White v. Bell Fruit Company, 4 FCR 382, 384 (1961), envisioned that the deputy should enter an order
leaving to the parties the settling of any differences they may have regarding any contractual rights that may exist among the parties involved, for example, reimbursements of costs of remedial treatment paid by virtue of a private insurance policy covering sickness and accidents.
This worthy aspiration by the IRC  "leaving to the parties the settling of any differences they may have" concerning the details of putting admittedly due benefits into the right hands  connotes and assumes some degree of initiative and responsibility in the lawyers who advise claimants and carriers. Yet what the lawyers in this matter initiated was not a routine dispersal of funds but a circular course of litigation resulting first, on March 9, 1981, in a deputy's order for direct reimbursement to Medicare and Blue Cross; then, on January 6, 1982, in our Solomonic decision, in accordance with White, that "collateral disputes as to reimbursement of outside entities not before the deputy commissioner are to be settled among the parties involved"; and now, in response to protests by both lawyers on petitions for rehearing and clarification, in a further court order that the amount of the hospital bill be paid to Lovie George, the injured worker, but subject to both a lien in favor of Medicare and Blue Cross and an admonition that Lovie George "shall insure that those entities [Medicare and Blue Cross] are properly reimbursed."
That we should think this rerouting of the money is a solution superior to that ordered by the deputy, or is one effectively remedying the parties' failure to initiate some nonlitigious resolution of this manufactured problem, reveals how unconsciously and passively this Court has become the bound prisoner of litigious instincts ingrained in the workers' compensation bar and through them in clients who supposedly are self-administering this "self-administered" system. Even as new appeals to this Court for judicial administration of the "self-administered" system continue to pour in at the rate of 60 to 80 per month, we reward that litigation by arbitrating minor issues that, according to the principle we nominally embrace, "are to be settled among the parties involved." Litigation in this Court thus becomes the means by which counsel avoid compliance with the principle on which the Court stands; and without protest we participate in this exhausting and destructive process. "When me they fly," said the poet, "I am the wings." That is the futility of a court indulging litigation to enforce, against the parties' wills, a rule against litigation.
This litigation thus ends as it began, with an assumption by the lawyers, acquiesced in first by the deputy and then by the Court, that zealous representation of their clients prevented their fulfilling the professional role implied for them by White, "the settling of any differences they may have regarding any contractual rights that may exist among the parties involved." If at any point in the controversy the lawyers had suggested any mutually agreeable solution, or even one that neither objected to with great vehemence, the deputy or this Court would gladly have adopted that recommended course. But while our opinion, of January 6, 1982, did not satisfy either counsel's exacting standards for judicial resolution of problems counsel should have resolved long ago, so also in the beginning, at the deputy's hearing on January 21, 1981, counsel displayed adversariness not conciliation, and moreover they stated their irreconcilable positions on this minor issue quite unproductively. When the deputy inquired of the carrier's lawyer, "You want to pay Medicare back?," he obscurely replied, "To whomever my client owes the money to." And when counsel representing Lovie George said, "I will be happy to give the Court the [federal] regulations" entitling Medicare to reimbursement only from his client, who must therefore be paid by the carrier, the deputy responded, "Show me the law, then I will decide." To that counsel *994 replied, "I do not have it with me." After other inconclusive exchanges on this and other matters, the deputy announced: "We are finished for today. We do not have anything else to do."
For my part, I think in these circumstances of counsel's failure to initiate a White-prescribed settlement that the deputy's solution was as good as any. With apologies to my colleagues for my late coming to this viewpoint, therefore, I would therefore withdraw entirely the opinion on this subject that we filed January 6, 1982, and affirm the deputy.
I would also reconsider the holding in our January opinion that Wekiwa Concrete v. Reddick, 396 So.2d 832 (Fla. 1st DCA 1981), requires reversal of the deputy's order that future checks, apparently including those intended to reimburse Blue Cross and Medicare, be made payable as well as to claimant's attorney. As to the Blue Cross and Medicare payments, this means of managing disbursements to the medical providers seems to me on further reflection not to be error. Insofar as the deputy intended by this arrangement to recognize the attorney's fee interest in these checks and any others that might be issued in the future, the deputy conditioned disbursement of the checks upon a "future determination ... regarding the amount of any reasonable attorney fee and the responsible party therefor." That provision, I think, fairly meets the objection our January decision voiced. Moreover the impediment to this urged by the carrier on appeal, that the fee hearing should have preceded this arrangement, was nowhere urged by the carrier upon the deputy. Again we encounter the irony that for three years has accompanied our strict scrutiny of deputies' orders as though they involved on every point fundamental constitutional rights that must be guarded even when not asserted below: in the name of protecting the injured worker's interest in receiving the compensation benefits undiminished by unapproved attorney fees, we justify the carrier's decision during the appeal not to pay those benefits at all, so keeping use of the money. Even if objection had been made to the deputy on the ground generated during the appeal for faulting his order, I would be inclined to affirm the order as accomplishing substantial justice. But as things stand I would affirm that portion of the deputy's order because the ground for assailing it was not raised before the deputy. Sunland Hospital/State of Florida v. Garrett, 415 So.2d 783 (Fla. 1st DCA, 1982):
We decline to become the tribunal of first resort on complex questions latent in the record but not substantially raised before the deputy. To the extent our own record of decisions these past three years may have given the appearance of a present and continuing readiness to decide questions not substantially raised before the deputy, thus misleading counsel, we now forswear that implication.
On reconsideration of this case, therefore, I would affirm the deputy's order.