KAHN, Judge,
concurring.
By our per curiam decision in this case, we have affirmed an award of worker’s compensation benefits to Sherry Lyn Black-man. I concur in the court’s decision, and write only to address one matter raised in the employer’s brief.
Ms. Blackman went to work for a fast food restaurant operated by the employer in February 1989. The undisputed evidence in this ease shows that on January 17, 1989, while swimming in the Atlantic Ocean, Ms. Blackman was struck by a large wave. The force of the wave threw her to the ocean floor, causing a dislocation of her right shoulder. She received treatment at a local emergency room where her shoulder was placed in a sling. According to Ms. Blackman’s treating physicians, a shoulder separation in a young person (she *212 was 17 years old at the time) will predispose that person to future dislocations. As it turned out, in July 1989, while working at the restaurant, Ms. Blackman in fact suffered a second shoulder dislocation while swatting a fly. Over the next year she suffered two more shoulder dislocations, one occurring as she was rolling up a window in her car, and the other occurring while she was swimming.
The compensation claim relates only to the second incident, since none of the other three dislocations occurred on the job. After the series of four dislocations, Ms. Blackman’s doctor recommended and performed surgery. This case is about benefits payable after the last two shoulder separations, and, in particular, benefits relating to the surgery and follow-up treatment.
The employer, citing our decision in Hillsborough County School Board v. Williams, 601 So.2d 624 (Fla. 1st DCA 1992), has attempted to argue that because Ms. Blackman had a “preexisting idiopa-thy” when she went to work at the restaurant, the JCC should have made a determination of whether her injuries actually arose out of and in the course of her employment. The employer correctly points out medical testimony indicating that the physical exertion involved in swatting a fly would not be expected to result in a shoulder dislocation in someone with a normal shoulder. In Williams, we relied upon the following language from the supreme court’s decision in Southern Bell Telephone & Telegraph Co. v. McCook, 355 So.2d 1166, 1168: “An idiopathic condition which results in injury to the worker does not ‘arise out of’ employment unless the employment in some way contributes to the risk or aggravation of the injury.”
My review of the evidence in this case suggests to me that Ms. Blackman suffered the July 1989 shoulder dislocation, not because of some risk or requirement attendant to her employment, but because she engaged in the rather mundane activity of swatting a fly, having suffered a previous noncompensable shoulder dislocation. Accordingly, under McCook and Williams, one might reasonably argue that the July 1989 injury was not compensable in the first place, thus obviating the need to address whether disability and medical treatment occurring after the third and fourth dislocations would be the proper subjects of a claim.
Ms. Blackman points out, however, that we are completely prohibited from reaching this question. At the hearing before the JCC, the employer expressly admitted com-pensability for the July 15, 1989 fly swatting incident, and defended solely based upon a supposed lack of causation as to the third and fourth incidents. Counsel stated, “We’re saying because of the subsequent injury, the accident is no longer compensa-ble.” Thus, not only did the employer and carrier fail to litigate the question of com-pensability at the hearing, they clearly stipulated away the issue. We have no basis whatsoever to consider the potentially dis-positive question of whether Ms. Blackman suffered a compensable injury in July 1989. See Sunland Hospital/State of Florida v. Garrett, 415 So.2d 783 (Fla. 1st DCA 1982).