633 So.2d 477 (1994)
SHOWELL FARMS and Helmsman Management Services c/o Liberty Mutual Insurance Company, Appellants,
v.
Dessie CARTER, Appellee.
No. 92-185.
District Court of Appeal of Florida, First District.
February 23, 1994.
*478 Mary E. Ingley, of McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., Tallahassee, for appellants.
Barry Silber, of Myrick, Silber & Davis, P.A., Pensacola, for appellee.
JOANOS, Judge.
Showell Farms and Helmsman Management Services, employer and servicing agent (e/sa) in this workers' compensation case, appeal an order of the judge of compensation claims (JCC) awarding compensation benefits, attorney's fees, and costs to the claimant, Dessie Carter. E/sa challenge the JCC's ruling with respect to: (1) the award of enhanced temporary total disability benefits, pursuant to section 440.15(2)(b), Florida Statutes (Supp. 1990); (2) the award of attorney's fees; (3) alternatively, the attorney's fee award where it is alleged that e/sa paid permanent total disability benefits within twenty-one days after the claim became ripe; (4) the award of permanent total disability benefits, where it is alleged the claim was prematurely filed; and (5) the award of costs, where it is alleged claimant failed to prove any benefits were due. We affirm.
On July 19, 1990, as claimant was working in the employer's chicken processing plant, one of her thumbs became impaled on the hooks of an overhead conveyor system, dragging her along the conveyor line. In her effort to free herself, she reached up and her other thumb became impaled on the hooks moving up to the next level. Both thumbs were traumatically amputated. Claimant's non-dominant left thumb was recovered, and on the night of the accident, surgeons attempted to replant claimant's left thumb to her dominant right hand. Reconstructive surgery was performed on her right stump a few days later, with a skin graft taken from her left great toe. When this skin graft failed, her left thumb was attached to the inferior aspect of her right breast for fourteen days to give coverage to the stump. Subsequently, claimant developed cellulitis of her lower left leg as a result of the donor surgery.
Claimant was discharged from the hospital on August 1, 1990, with a prescription for medically necessary home care. On September 17, 1990, a claim for benefits was filed seeking (1) permanent total disability; (2) compensation from 7/19/90, and continuing; (3) reimbursement for all underpayments; (4) home attendant care as prescribed by Dr. Rogers from the 8/1/90 date of hospital discharge and continuing; and (5) attorney's fees pursuant to section 440.34(3)(b), and costs.
Dr. Rogers, claimant's treating plastic surgeon/hand surgeon, testified that the traumatic amputations of claimant's thumbs resulted in functional loss of use of both hands for at least six months after the accident. Dr. Rogers opined that claimant reached maximum medical improvement on March 12, 1991, with a forty percent permanent partial whole body impairment attributable to her thumb amputations and the ongoing symptoms in her left leg. In a letter to the carrier dated March 12, 1991, Dr. Rogers advised that claimant could return to light duty with the following restrictions:
(1) right hand, avoidance of fine manipulation, lifting not to exceed twenty pounds, avoidance of exposure to heat and cold;
(2) left hand, avoidance of repetitive motion, avoidance of exposure to heat and cold, lifting not to exceed twenty pounds. I do not believe it is in the patient's best interest to be around moving machinery.
During his deposition of June 6, 1991, Dr. Rogers affirmatively restricted claimant from working around moving or open machinery, exposure to heat or cold, and prolonged standing  due to swelling in both of her lower legs.
On March 19, 1991, after the maximum medical improvement date was established, claimant began a work search, and submitted wage loss requests and work search forms to the servicing agent. By registered mail in letters dated March 19, April 8, and April 23, 1991, e/sa offered claimant a job as "wing grader." The job required claimant to work *479 with a moving conveyor belt and to use scissors to sever chicken parts. Since claimant is without thumbs, she is unable to use scissors. Later, e/sa recognized that claimant could not perform the wing grader job. Two weeks before the merits hearing, the employer offered claimant a job as a "leg grader," explaining the job had been tested by an employee with taped thumbs wearing cotton gloves. The job description was sent to Dr. Rogers. During his June 1991 deposition, Dr. Rogers viewed a videotape of the leg grader job. He said claimant could do the simple hand movement involved, but she could not stand as the job required, and could not work with open moving machinery, as was visible in the videotape.
Rehabilitation Specialist Gilmartin was deposed May 15, 1991. His testimony reflects that, due to claimant's history of unskilled work, she has no transferable skills which allow her to move to a different occupation. He concluded that claimant is not a competitive employment candidate, and is not a candidate for retraining. State Rehabilitation Nurse Wiggins testified May 16, 1991. She interviewed the claimant, reviewed the medical and vocational evaluation records and reports concerning claimant, and concurred with Mr. Gilmartin's assessment. Ms. Wiggins opined that claimant is not a candidate for any sort of gainful competitive employment, or any sort of rehabilitative training program. Ms. Wiggins's rehabilitation report reveals that claimant was then fifty-two years of age. Claimant's formal education ended with eighth grade, and she has difficulty reading simple sentences and understanding simple commands. Test results revealed that claimant is borderline retarded, and functions at the fifth grade level. Her work history has been limited to unskilled factory and farm labor at minimum wage.
The pretrial stipulation, filed May 23, 1992, sets forth the following defenses:
(1) Voluntary limitation of income.
(2) Claimant not PT  work available at Employer within Claimant's restrictions.
(3) Attendant care not reasonably and medically necessary.
(4) No costs or attorney's fees due.
(5) No Employer/Carrier bad faith.
At the merits hearing, e/sa announced that claimant was accepted as permanently and totally disabled, effective June 10, 1991. Claimant asserted entitlement to permanent total disability benefits retroactive to the date of maximum medical improvement, enhanced temporary total disability benefits pursuant to section 440.15(2)(b), Florida Statutes (Supp. 1990), attorney's fees and costs. The JCC awarded enhanced temporary total disability benefits from July 19 to September 12, 1990, permanent total disability benefits from March 12 through June 9, 1991; and attorney's fees, and costs.
When the case was appealed, it was discovered that, due to malfunction of the recording equipment, the merits hearing could not be transcribed. Since the issues on appeal concern matters of law, the parties and the JCC determined that a record of the hearing could be reconstructed by use of the JCC's detailed notes. During a telephone conference on May 16, 1992, and proceedings held August 26, 1992, e/sa's counsel (who did not try the claim on the merits) attempted to raise defenses that were not asserted at the merits hearing. Claimant's counsel objected to the defenses asserted after the compensation order issued, and moved to strike anything pled or raised by e/sa that was not set out in the pretrial questionnaire and stipulation prior to the June 11, 1991, hearing.
The first issue concerns the propriety of the award of enhanced temporary total disability benefits, under the provisions of section 440.15(2)(b), Florida Statutes (Supp. 1990). This provision states in relevant part:
... an employee who has sustained the loss of an arm, leg, hand, or foot, has been rendered a paraplegic, paraparetic, quadriplegic, or quadriparetic, or has lost the sight of both eyes shall be paid temporary total disability of 80 percent of his average weekly wage [as opposed to 66-2/3 percent of average weekly wage].
This provision went into effect July 1, 1990. Since claimant's industrial accident and injuries occurred July 19, 1990, the 1990 amended version of section 440.15(2)(b) is applicable to her claim for benefits. Garcia v. Carmar Structural, Inc., 629 So.2d 117, 118 (Fla. *480 1993) ("[T]he date of the claimant's injury determines the applicable law."). See also Sullivan v. Mayo, 121 So.2d 424, 428 (Fla. 1960).
Prior to the 1990 amendments, section 440.15(2)(b), stated in relevant part:
... an employee who has sustained the loss of an arm, leg, hand, or foot, or within a reasonable medical certainty the anticipated permanent and total loss of use of such member ... shall be paid temporary total disability of 80 percent of his average weekly wage ... (e.s.)
E/sa assert the omission of the phrase "total loss of use" from the 1990 amended version indicates legislative intent that only an amputation of an entire hand or foot, rather than amputation of an appendage thereto, will support enhanced temporary total disability benefits. Although we agree that the plain language of amended section 440.15(2)(b) compels such a conclusion, resolution of this issue is controlled by the manner in which the case was presented to, and ruled upon, by the JCC. It is undisputed that e/sa raised merely a general denial to the claim for enhanced temporary total disability benefits. Thus, the argument now advanced for reversal was neither presented to the JCC, nor ruled upon in the compensation order before us for review.
The e/sa's objection to paying a category of benefits must be made known to the JCC 
clearly and contemporaneously, and in substantially the same detail as the carrier would later wish to urge upon us. Mere general denial of entitlement to particular benefits will not suffice to preserve for appellate review specific legal theories in defense of claims.
A & J Tie Beam Service v. Kendle, 511 So.2d 653 (Fla. 1st DCA 1987), quoting Sunland Hospital/State of Florida v. Garrett, 415 So.2d 783 (Fla. 1st DCA 1982).
The parties' stipulation and the reconstructed record demonstrate that e/sa waived the defense that the amended version of section 440.15(2)(b) precluded an award of enhanced temporary total disability benefits for the traumatic amputation of both of claimant's thumbs. We find it unnecessary to discuss the other issues raised by e/sa, as the points either were not presented to the JCC, or are without merit in light of the competent substantial evidence in the record which supports the JCC's findings.
Accordingly, the order of the JCC is affirmed in all respects.
ERVIN and WOLF, JJ., concur.